# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Darryl Colbert,

        Petitioner,

v.

State of Minnesota and Jessica Symmes,

        Respondents.

**MEMORANDUM OPINION AND ORDER**
Civ. No. 06-4407 ADM/RLE

---

Darryl Colbert, *pro se*.

David C. Brown, Esq., Assistant Hennepin County Attorney, Minneapolis, MN, on behalf of Respondents.

---

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Petitioner Darryl Colbert's ("Petitioner") Objections and Addendum to Objections [Docket Nos. 16 and 17, respectively] to Magistrate Judge Raymond L. Erickson's August 16, 2007, Report and Recommendation ("R&R") [Docket No. 12]. For the reasons set forth below, the Objections are overruled and the R&R is adopted.

## II. BACKGROUND[1]

Evidence adduced at Petitioner's trial included testimony that on December 26, 2003, Petitioner and Robert Mitchell had a conversation at Sunny's bar in Minneapolis, and left the bar together at about 6:00 p.m. Petitioner was wearing a dark hat and a long dark coat. Shortly thereafter, Mitchell was shot to death. Witnesses to the shooting reported seeing a man in a dark

---

[1] The procedural and factual background, described in the R&R, is incorporated by reference for review of Petitioner's present Objections.

hat and long dark coat driving a white sedan away from the scene. Surveillance tapes showed a white sedan, similar to the shooter's vehicle and similar to a white 1988 Chrysler New Yorker owned by Petitioner, drive by Sunny's shortly after the shooting. The next day, Petitioner used the gun that killed Mitchell to shoot Troy Parker. Petitioner was also wounded in the incident.

Petitioner was charged with the first degree murder of Robert Mitchell and tried in a Minnesota trial court. Petitioner's first trial resulted in a hung jury, and a mistrial. At a second trial, a jury found Petitioner guilty. Petitioner appealed his conviction, on the same grounds as the instant Petition, to the Minnesota Supreme Court, which affirmed the conviction. See Minnesota v. Colbert, 716 N.W.2d 647 (Minn. 2006).

On November 3, 2006, Petitioner filed his Petition for Writ of Habeas Corpus ("Petition") [Docket No. 1]. Petitioner sought relief on three grounds: (1) the evidence presented at trial was insufficient to support the conviction; (2) the prosecution failed to disclose exculpatory evidence to the defense; and (3) there was prosecutorial misconduct that deprived Petitioner of a fair trial.

On December 5, 2006, Respondents the State of Minnesota and Jessica Symmes filed their Answer and Memorandum in Opposition ("Answer") [Docket Nos. 4 and 5, respectively] to the Petition for Habeas Corpus relief. Petitioner later filed a Brief [Docket No. 9]. In his R&R of August 16, 2007, Magistrate Judge Erickson recommended dismissal of Petitioner's Petition with prejudice. R&R at 30.

### III. DISCUSSION

**A.     Standard of Review**

The district court reviews de novo those portions of a R&R to which objection is made and "may accept, reject, or modify, in whole or part, the findings or recommendations made by

the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. R. 72.2(b).

Under 28 U.S.C. § 2254, federal court habeas review of state court criminal convictions resulting in incarceration is limited:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). Additionally, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### B.     Petitioner's Objections

Petitioner objects to the R&R, essentially reciting his claims in the Petition. First, Petitioner objects that the evidence was insufficient to support his conviction, arguing that there is no direct evidence and that there is too much conflicting evidence. Second, Petitioner objects to the finding that there was no discovery violation, arguing that he was deprived of a chance to challenge and impeach an expert witness's testimony. He also "accuses the government of knowing that [its] expert witness would be giving false testimony." Addendum to Objections at 2. Third, Petitioner objects that prosecutorial misconduct, taken cumulatively, affected the outcome of the trial.

**1.    Insufficiency of the Evidence**

Petitioner argues that there was insufficient evidence for a jury to find him guilty beyond a reasonable doubt, and that his conviction is therefore constitutionally invalid. Evidence is sufficient for a conviction if the "record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). A jury verdict will be upheld so long as the reviewing court determines that "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). The reviewing court must view the evidence and all permissible inferences drawn therefrom in the light most favorable to the jury's verdict. See United States v. Beaman, 361 F.3d 1061, 1064 (8th Cir. 2004) (citing United States v. McCarthy, 244 F.3d 998, 999 (8th Cir. 2001)).

The incriminating evidence in Petitioner's second trial was substantial and sufficient to prove the Petitioner's guilt. Petitioner has acknowledged that he spoke with Mitchell shortly before Mitchell was murdered and that they left the bar at the same time. A bar surveillance tape showed that Petitioner was wearing a long coat and a dark hat when they left the bar. Minutes later, three witnesses heard the gunshots that killed Mitchell and saw a man in a long coat leaving the scene in a white sedan. Two of the witnesses said that the man leaving the scene was also wearing a broad-brimmed hat. Petitioner acknowledged that he was wearing a broad-brimmed hat at the bar. Petitioner was driving a white sedan on the night of the murder. The day after the murder, Petitioner was in possession of the same gun used to kill Mitchell and in fact used that gun to shoot another man.

The defense presented some arguably exculpatory evidence, including Petitioner's own

testimony. However, it was the province of the jury to evaluate and reject evidence it chose to discredit. As Judge Erickson found, "given the substantial incriminating evidence presented at Petitioner's [second] Trial, it is hard to imagine that the Jury could have found the Petitioner **not** guilty." R&R at 16 (emphasis in original). The circumstantial evidence was sufficient to support a guilty verdict, and Petitioner is not entitled to a writ of habeas corpus on his insufficiency of the evidence claim.

**2. Discovery Violation**

Petitioner contends that certain exculpatory evidence was suppressed by the prosecution in violation of the Supreme Court's decision in Brady v. Maryland, 373 U.S. 83, 87 (1963). Under Brady, "the prosecution is required to divulge all evidence favorable to the accused that is material either to guilt or to punishment." Lingle v. Iowa, 195 F.3d 1023, 1026 (8th Cir. 1999) (citing Brady, 373 U.S. at 87). "To establish a violation of Brady, a defendant must show that: (1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material." Dye v. Stender, 208 F.3d 662, 665 (8th Cir.2000). In the Eighth Circuit, the Brady rule is limited "to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during trial, Brady is not violated." United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996) (citations omitted).

The evidence at issue here is the testimony of an expert videotape analyst. The night before the analyst testified at Petitioner's second trial, the analyst told prosecutors that a coat seized from Petitioner's residence did not match the coat Petitioner wore in a surveillance videotape on the night of the murder. The prosecution sent an email to defense counsel that

night, but Petitioner claims that defense counsel did not see the email until after the expert testified. Petitioner claims that he was prejudiced by this allegedly late disclosure because he was not able to use the expert witness's opinion to impeach one of the prosecution's witnesses. As thoroughly discussed in the R&R, the disclosure was made before the end of the trial, and the trial court allowed the defense to re-call the witness Petitioner wished to impeach. Any possible prejudice to Petitioner was remedied by the trial court's allowing the re-call of the witness.

Petitioner further argues that the allegedly late disclosure constitutes a change in the prosecution's theory of the case, and that he did not have a chance to adequately prepare to defend against the new theory. The Minnesota Supreme Court rejected this argument because the prosecution's theory of the case was not affected by the expert witness's opinion on the identity of the coats. Colbert, 716 N.W.2d at 656. That Court found that the prosecution consistently argued that what mattered was not the match between the seized coat and the coat in the video, but the match between the coat worn by Petitioner on the video and the coat the eyewitnesses to the shooting said was worn by the shooter. Id. The Minnesota Supreme Court's analysis is correct, and Petitioner's claim that he was so prejudiced is dismissed.

Petitioner attempts to augment this claim when he "accuses the government of knowing that [its] expert witness would be giving false testimony." Addendum to Objections at 2. Petitioner neither specifies what testimony was allegedly false nor identifies the effect it had on the outcome of the case.[2]

---

[2] This is apparently also the first time in any proceeding that he characterizes the expert witness's testimony as false.

### 3. Prosecutorial Misconduct

Petitioner claims three instances of alleged prosecutorial misconduct: (1) the prosecutor argued to the jury that Petitioner had been unfaithful to his fiancé, (2) the prosecutor argued to the jury that Petitioner had the opportunity to tailor his testimony to fit prior witnesses' testimony, and (3) the prosecutor told the jury that Petitioner "has as many places to hide whatever he needs hidden as he has women." Petitioner "bears the heavy burden of showing that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Mack v. Casperi, 92 F.3d 637, 643 (8th Cir. 1996).

Petitioner objects that the three claimed instances of prosecutorial misconduct, taken cumulatively, affected the outcome of the trial. Petitioner cites generally United States v. Iglesias, 915 F.2d 1524 (11th Cir. 1990), presumably for the proposition that "[a] prosecutor may not go beyond the evidence before the jury during closing argument," id. at 1529, and United States v. Hawkins, 595 F.2d 751 (D.C. Cir 1978), presumably for the proposition that "counsel are not free to go outside the evidence in arguments to the jury," id. at 754.

The prosecutor's comments during closing argument regarding Petitioner's unfaithfulness are supported by Petitioner's own testimony: Petitioner testified that in the twenty-four hours following Mitchell's murder, he had sex with a woman who was not his fiancé and "fell asleep" at the house of another woman. Tr. at 1270-71, 1312-13. Assuming arguendo that the remarks constituted misconduct, the Minnesota Supreme Court found that they were not so harmful as to deprive Petitioner of a fair trial. Colbert, 716 N.W.2d at 657. The R&R did not find this conclusion objectively unreasonable, and neither does this Court.

Petitioner also claims that he was denied a fair trial when the prosecutor noted the Petitioner's ability to tailor his testimony to the facts presented at trial. However, as addressed in the R&R, in Portuondo v. Agard, 529 U.S. 61 (2000), the Supreme Court held that such comments are not proscribed by the Constitution.

Last, Petitioner claims that he was prejudiced when the prosecutor, anticipating questions about where the murder weapon might have been kept prior to the shooting, stated during closing arguments that "the defendant has clothes and property in many places," and "as many places to hide whatever he needs hidden as he has women." Tr. at 1477. The trial judge overruled an objection from Petitioner's counsel that there was no evidence to support the statement, declaring, "It's argument and you may respond." Id. Petitioner claims he was prejudiced because these comments were directed to his credibility. The Minnesota Supreme Court rejected this claim, and this Court does not find such rejection to be objectively unreasonable.

The Minnesota Supreme Court's rejection of Petitioner's three claims of prosecutorial misconduct was not objectively unreasonable, and therefore habeas corpus cannot be granted on those grounds.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Report and Recommendation [Docket No. 12] is **ADOPTED**;

2. Petitioner's Objections and Addendum to Objections [Docket Nos. 16 and 17] are **OVERRULED**;

3. Petitioner's Petition for a Writ of Habeas Corpus [Docket No. 1] is **DENIED**; and

4. Petitioner's Request for Counsel [Docket Nos. 14 and 18] are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 28, 2007.